THE ROYAL FURNITURE COMPANY, *etc.*

*v.*

THE CITY OF MORGANTOWN, *etc.*

*and*

RICHARD ROSENBAUM, *et al.*

*v.*

THE CITY OF MORGANTOWN, *etc.*

(No. 14075)

Decided February 26, 1980.

Rehearing Denied April 3, 1980.

*David L. Solomon* for appellant.

*Frame & Tucker and Clark B. Frame* for appellee Royal Furniture Co.

*Ball & Dinsmore and Robert W. Dinsmore* for appellees Richard Rosenbaum, et al.

CAPLAN, JUSTICE:

The above styled cases were consolidated for trial in the Circuit Court of Monongalia County and verdicts for both plaintiffs were returned by the jury. A verdict in the amount of $60,000.00 was returned in favor of Royal Furniture Company and one in the sum of $26,600.00 was awarded to Richard and Hilda Rosenbaum. After motions to set aside the judgments entered on said verdicts were overruled, this appeal was prosecuted. We affirm the judgments of the circuit court.

The defendant in these separate civil actions, The City of Morgantown, is the owner and operator of a water distribution system. The plaintiffs, Royal Furniture and the Rosenbaums, operate retail business establishments adjoining each other on High Street in the City of Morgantown. The complaints in these consolidated civil actions are very similar, being based on the same facts and causes of action. In each complaint it was alleged that the defendant negligently caused and allowed wa-

ter to escape from one of its water lines and run into plaintiffs' premises, thereby causing damages to their store properties and the merchandise, equipment and facilities therein.

On the first day of the trial some difficulty arose in relation to the proof of damages by the Rosenbaums and they moved for a voluntary nonsuit, without prejudice. The motion was sustained. The trial proceeded on Royal Furniture's claim, during which that plaintiff noted to the court the manner in which it intended to prove damages. On the next day of the trial, the court, on the motion of counsel for the Rosenbaums, set aside the nonsuit previously entered and reinstated their action.

Upon this appeal, the City of Morgantown relies principally on the following assignment of errors: (1) the reinstatement of the Rosenbaums' action after they had taken a voluntary nonsuit; (2) the application of the doctrine of *res ipsa loquitur*; (3) the failure to properly prove damages in each case; and (4) the granting of Instruction No. 4, dealing with damages, offered by the plaintiffs.

With regard to the first assignment of error, we find that the court did not err by reinstating the Rosenbaum action on the day following the granting of a voluntary nonsuit. It is well settled in this jurisdiction that the setting aside of a voluntary nonsuit and the reinstatement of the action is "a matter within the sound discretion of the trial court." *State ex rel. The Wilkes Ins. Agency v. Damron*, 85 W.Va. 619, 102 S.E. 238 (1920). See *Nibert v. Carroll Trucking Company*, 139 W.Va. 583, 82 S.E. 2d 445 (1954); *White Sulphur Springs, Inc. v. Ripley*, 124 W.Va. 486, 20 S.E. 2d 794 (1942); *Murray v. Roberts*, 117 W.Va. 44, 183 S.E. 688 (1936); and *Higgs v. Cunningham*, 71 W.Va. 674, 77 S.E. 273 (1913). See also *W.Va. Code*, 1931, 56-8-12, which, in relation to the reinstatement of a nonsuit says: "Any court may, on motion, reinstate . . . ," and Rule 41, Rules of Civil Procedure.

In the instant case the record reveals that the Rosenbaums moved for and were granted a voluntary nonsuit,

that, on the next day, their motion to reinstate their action was granted and, that on the latter occasion, while the defendant noted an exception, it did not request a continuance but continued with the trial of the two consolidated actions.

In *Hutchinson v. Mitchell*, 143 W.Va. 280, 101 S.E. 2d 73 (1957), the Court, quoting Pt. 1, Syl., *Thomas v. Jones*, 105 W.Va. 46, 141 S.E. 434 (1928), said:

> In setting aside a non-suit and reinstating the case upon the trial docket under chap. 127, sec. 11, Code, the trial court may consider the evidence given up to the time of the non-suit, and his rulings in the case, for ascertaining good cause for granting the motion to set aside and reinstate, and his action in so doing will not be disturbed by the appellate court unless it is shown that his discretion in that regard has been abused.

Here, the record reveals that Richard Rosenbaum was in poor health and that by reason thereof and other "personal reasons" the plaintiffs were anxious to move the litigation to final judgment. Furthermore, there is no showing that the defendant suffered any prejudice by such reinstatement. The defendant city was prepared to defend; there was no surprise detrimental to the defendant's case; the reinstatement occurred the day following the granting of the nonsuit (before the nonsuit order was entered); and, the defendant city proceeded with the trial of the Rosenbaum claim. In the circumstances noted above, this assignment of error is without merit.

The second issue—the propriety of applying the doctrine of *res ipsa loquitur* in the instant case—is perhaps more complex. The mere occurrence of an injury or damage to property does not give rise to a presumption of negligence on the part of anyone. However, under the doctrine of *res ipsa loquitur*, which means literally that the thing or transaction speaks for itself, the facts or circumstances accompanying an injury or damage may be such as to raise a presumption or permit an inference

of negligence on the part of the defendant. The following is found in 58 Am. Jur. 2d, *Negligence*, § 474, and was adhered to by our Court in *Frye v. McCrory Stores, Corp.*, 144 W.Va. 123, 107 S.E. 2d 378 (1959) and *Bennett v. Sims*, 131 W.Va. 312, 48 S.E. 2d 13 (1948):

> The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care.

The doctrine of *res ipsa loquitur* cannot properly be applied unless the three essentials thereof exist. They are: (1) the instrumentality which causes the injury or damage must be under the exclusive control of the person charged with the negligence; (2) the plaintiff must be without fault; and (3) the injury or damage must be such as in the ordinary course of events it would not have happened had the one in control of the instrumentality used due care. See *Walton v. Given*, _____ W.Va. _____, 215 S.E.2d 647 (1975).

Upon examination of the facts and circumstances of this case, we conclude that the trial court did not err in applying the doctrine of *res ipsa loquitur*. Unquestionably, the water pipes, which caused the damage were installed by and remained the property of the defendant city. It is undisputed that they were under the exclusive control of the city at the time of the damage to the plaintiffs' property. Although the defendant sought to explain the reason for the bursted pipes, the explanation consisted of mere speculation of what may have happened to cause the rupture and subsequent damages.

This explanation was inadequate and did not excuse the defendant from blame.

It was further established that the subject water pipes were buried under the city streets at a depth of two to three feet. No one, other than city personnel had access to them. Evidence was adduced which revealed that a short time prior to the instant pipe rupture the water main broke at a place in close proximity thereto and that the city used a jackhammer to break the pavement in order to repair that main. Furthermore, it was revealed that the water was turned off after the discovery of the break in the water main but was turned on again for approximately three hours to accommodate the Hotel Morgan.

In *Wigal v. City of Parkersburg*, 74 W.Va. 25, 81 S.E. 554 (1914) and *Weaver Mercantile Co. v. Thurmond*, 68 W.Va. 530, 70 S.E. 126 (1911) this Court affirmed the application of *res ipsa loquitur* to water tanks or reservoirs maintained by the ones charged with negligence. Certainly, if water tanks and reservoirs used to supply water to a city-owned system or to a private enterprise can be found to be under the exclusive control of their owners so as to justify a presumption of negligence under the doctrine of *res ipsa loquitur*, a water main buried two to three feet beneath a city street must be considered to be within the exclusive control of the city which owns such water main.

Unquestionably the broken water main caused the damages complained of in the instant case. Such main, being under the exclusive control of the defendant, absent some explanation for the water pipe rupture which would exonerate the city of negligence or a showing that the plaintiffs' caused or contributed to the damage of the main, the application of the doctrine of *res ipsa loquitur* permits in this case a presumption of negligence on the part of the defendant city. In no way does the application of the *res ipsa* doctrine dispense with the requirement that negligence must be proved by him who alleges it. However, when the essentials of said doctrine

are present, evidence of negligence is supplied. *Mecum v. Food Machinery and Chemical Corp.*, 143 W.Va. 627, 103 S.E.2d 897 (1958).

The subject water main was installed approximately ten years prior to the instant break and, according to the testimony of the manager of the Morgantown Water Commission, a registered professional engineer, was expected "to last about 100 years". A break in the water main in such a relative short period of time justifies, in the circumstances revealed herein, a presumption of negligence on the part of the defendant city under the *res ipsa loquitur* rule. We find the three essentials necessary for the application of the doctrine of *res ipsa loquitur* set forth in *Walton v. Given, supra*, to be present in the instant case and agree with the trial court that such doctrine is applicable. See *Adam Hat Stores, Inc. v. Kansas City*, 316 S.W.2d 594 (Mo. 1958).

The remaining assignments of error relate to the adequacy of the proof of damages. We find that, although the evidence concerning damages was somewhat confusing, the admission of such evidence, upon which the jury arrived at a verdict, does not constitute reversible error. That there was extensive damage in both the Rosenbaum case and in the Royal Furniture case cannot be successfully refuted under the evidence adduced at the trial.

This Court consistently has held that, as a general rule, "the proper measure of damages for injury to personal property is the difference between the fair market value of the property immediately before the injury and the fair market value of the property immediately after the injury, plus necessary reasonable expenses incurred by the owner in connection with the injury." *Cato v. Silling*, 137 W.Va. 694, 73 S.E. 2d 731 (1952). In relation to total loss of personal property, *Cato* said, "for the loss or the destruction of personal property, other than that which has a peculiar value to its owner [the proper measure of damages] is the fair market value of the property at the time of its loss or destruction." See *Adkins v.*

*City of Hinton,* 149 W.Va. 694, 142 S.E. 2d 889 (1965); *Butler et al. v. Smith's Transfer Corp.,* 147 W.Va. 402, 128 S.E. 2d 32 (1962); *Mullins v. Baker,* 144 W.Va. 92, 107 S.E. 2d 57 (1958); and *Stenger v. Hope Natural Gas Company,* 139 W.Va. 549, 80 S.E. 2d 889 (1954).

In relation to the Rosenbaum case the rulings of the trial judge were somewhat confusing as to what evidence was allowed or excluded. Nevertheless, evidence consisting of testimony of both Rosenbaums is in the record and was heard by the jury. This testimony set out the fair market value of the damaged merchandise, item by item, informed the jury that such damage constituted total loss of such merchandise, and, that all of the damaged merchandise was given to the Salvation Army.

The record reveals that the Rosenbaums were prominent and respected merchants, that they had been in the clothing business in excess of thirty years and that they had special knowledge relative to the value of the items damaged. Certainly, they were qualified to give competent evidence on the fair market value of their merchandise. The fair market value prior to the damage was stated. The unequivocal and undisputed testimony revealed the total loss of the items listed.

In the Royal Furniture case the evidence adduced in relation to the proof of damages does not conform strictly to the established law on damages. However, upon consideration of the entire record, we do not find any deficiencies which would constitute reversible error.

The defendant complains that many of the forty-two instructions offered by it were refused. An examination of the instructions reveals that many of the instructions not given were refused on the ground that they were repetitious. We held in *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963) that: "The refusal to instruct on a point already sufficiently covered by other correct instructions given does not constitute reversible error." See *McMillen v. Dettore,* ____ W.Va. ____, 242 S.E.2d 459 (1978).

The jury was well instructed as to its duties and responsibilities. It was told that damages must be proved, not presumed; that any award should only compensate the plaintiffs for their loss, if any, sustained by the conduct of the defendant; that the measure of liability of the defendant, if any, "according to all the instructions and all the evidence in the case, is to the extent of the proven damages"; that it should not allow sympathy or bias or the positions of the parties to influence its judgment; that it is the judge of the weight and credibility of the testimony of the witnesses; and, that damages must not be based on conjecture or speculation but solely upon the evidence and instructions by the court.

In *Yeager v. Stevenson,* 155 W.Va. 16, 180 S.E. 2d 214 (1971), the Court quoting from *Walker v. Monongahela Power Co., supra,* said:

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be presumed as true.

In these cases the evidence offered by the plaintiff exceeded the amounts of damage awarded by the jury. Applying the *Yeager* language, quoted above, we cannot say that the jury verdict and the judgments entered thereupon were wrong.

The judgments of the Circuit Court of Monongalia County are affirmed.

*Affirmed.*